All right, our fourth case for this morning is Gaylord v. United States. Mr. Friedman. May I begin? One second. We have a lot of in and out this morning. Chief Judge, may it please the court. Petitioner Gaylord did not have a fair day in the district court. He should have had an attorney appointed and an evidentiary hearing on his 2255 petition concerning whether trial counsel should have been found ineffective for having him plead guilty under the 841B1 that his illegal distributing of oxydome pills was but for cause of the victim's death. The cold record is ambiguous at best here as to the cause of death. He should have been advised after a proper investigation whether a trier of fact could find reasonable doubt under the but-for standard of Burrage. So what do we do about the fact that there is an appeal on collateral attack waiver in his case? I don't think that's the standard. I think there's some confusion from the district court opinions here. The standard is whether trial counsel was ineffective. So you would say the issue is ineffectiveness of counsel for failing to do this, which would invalidate, that would erase everything because we've said you can't pick and choose in a guilty plea. That puts him back. Yes. And that's what goes back even to Hill v. Lockhart and more recently Laffer v. Cooper. So that's the real standard. And I think first as a practical matter, I mean, does he even have a basis for a hearing? And I think that the record is ambiguous at best concerning the mixed drug intoxication. So can we think about if what we're talking about is ineffectiveness of counsel as a way of surmounting the waivers and all the rest of it, obviously there's a performance side of that and a prejudice side of that. But the government argues in its brief that the coroner's report goes pretty far towards saying that these are independently lethal doses. It's back on page 24 of their brief where I guess the toxicology report said the oxycodone was 0.64 micrograms per milliliter and is consistent with concentration levels that have resulted in fatalities. And then they talk about the cocaine. So are you asking us just to send this back to nail down the last little bit, like, yes, 0.64 really is enough to kill him? Yes, and I think that's really important. And, I mean, that goes to the nub of the prejudice in this case. I mean, it really does. I mean, he should have had a lawyer. He should have had an expert. I mean, it should briefly ask these questions to the toxicologist. I mean, could he have lived with the fact that some people have died with that in his system? Could he have lived with that in his system? And could a victim have high tolerance for the drug, for the oxycodone, and then the cocaine put him over the top? Did the cocaine amplify the effects of the oxydone? I think that's really the heart of the case. So you would agree if we had a hypothetical case in which somebody ingests two substances and either one of them alone would have been lethal, that that's fine under Burrage? Well, they specifically left that issue open, but there's some logic that implies that that may be enough. But you really cannot do this without an evidentiary hearing. When we took a look at the cases, you know, after the briefs were unfiled, it really comes down to on these mixed intoxication cases what really happened here. You know, when these reports are written under a pre-Burrage standard, nobody really was looking that closely at whether somebody has a high tolerance or whether other drugs amplified it. I mean, it could be that a petitioner would lose after the evidentiary hearing. I'm looking at the few hundred cases, I mean, after Burrage. Some have won and some have lost. So what kind of evidentiary hearing do you envision? This would be on the question whether there was deficient performance in prejudice for the ineffectiveness, and if either one of those fails, then he's just where he is. That's correct. That's correct. And I've already highlighted what we would do with the toxicologists and then also request our own expert to help and analyze these drugs. I mean, there's some studies indicating when you're dead, there's a higher concentration of stuff. I'm not an expert. I can't pawn myself off whether that's true or not or whether that expert is not reliable or not. I mean, that's something that really needs a hearing. And then the other prong is what exactly did the trialer tell my client? I mean, the allegations in the petition, although the district court said it wasn't raised, but it's pretty, for a pro se petition, I think he did a pretty good job. I mean, in Document 1, which is the petition, on page 6 he said, insufficient investigation by defense counsel before pleading guilty. And then in the reply, pages in Document 11, pages from 5 to 11 and page 13, he said that his lawyer should have had an expert. He should have investigated the case. So, I mean, really it comes down to an evidentiary hearing. And I think that without giving you a treatise on all the cases, that seems to be the trend to figuring out what the effects of mixed intoxication drugs on somebody dying is having a hearing. Mr. Freeman, do you think that a battle of experts or even agreement about experts would get a medical professional to say with certainty something other than this could cause, this amount could cause? I mean, that's not, medical doctors, as I would understand them, tend to be careful in their assessment. And aren't you really striving for a position that we can't ever get to? There is no but for in these mixed drugs. Well, I mean, obviously an aggressive lawyer is going to make that argument in the trial court. But there must be some parameters on these drugs where if you take this amount of oxydone, you're a goner. If you take this much cocaine, you've got problems. Unless, you know, there must be some, I am assuming, parameters on high tolerance and amplification. And we don't have any of it in this record, candidly. And that's what's needed. They have to be rich. Well, if it ends up inconclusive, is it your position that he has shown prejudice? I think if it's inconclusive. Or if it includes the burden there. I think that the government would have the burden, inconclusively win. My concern, obviously, whoever does the hearing, if there's a remand, they just simply say, you know, that oxydone is just so high. Well, I mean, there is medical evidence, not that we look at Internet sources. But one could imagine testimony. One could easily imagine what Judge Falme is talking about, that it winds up saying there's a range. And some people are going to die at the lower end of this range. And other people won't die until the higher end of this range. Well, you know, and maybe the defendant should get the benefit of the doubt, considering the policy of these large 20-year sentences under the statute. I mean, the decision of Burridge is an important decision, realizing that people are getting big sentences. And he didn't sell him the cocaine. You know, I mean, cocaine is not therapeutic, along with the oxydone. So the benefit of doubt should tip in favor of the defendant here. Okay. Well, if you'd like to save a little for rebuttal. I appreciate you offering. Mr. Bowen. Your Honor, may it please the Court. I think fundamentally this has never been about an ineffective assistance of counsel claim. The habeas petition doesn't reference ineffective assistance of counsel, doesn't reference Strickland. The district court specifically found on page 4 and in page 5 of his order that the defendant isn't asserting ineffective assistance of counsel in negotiating. Instead, the ineffective assistance of counsel is now on appeal to avoid the collateral attack waiver that was in the plea agreement. Even this Court's certificate of appealability didn't reference the ineffective assistance of counsel, but instead whether this conviction is consistent with Burridge. And we believe that this conviction is consistent with Burridge because it was consistent with Hatfield, this Court's decision on the but-for causality in a results-from case, which was. . . Hatfield's a little mushy. I mean, I'm not 100 percent sure that there's a perfect overlap. I mean, I think your point about whether he adequately raised ineffectiveness of counsel is crucial because, you know, given the appeal waiver and the collateral attack waiver, you know, you've got to sort of strike at the root. And if the plea stands, then the waivers stand. But if the plea doesn't stand, as you are well aware, because of ineffectiveness. And, of course, it starts out pro se, Okay, so we need to be charitable in the way we read what he submitted. Charitable is correct, but allowing it to be made out of nothing, I think, is different. There is a procedural bar as well, too. If it isn't an ineffective assistance of counsel claim, then it's untimely because he could have raised an ineffective assistance of counsel claim under 2255 right after he pled guilty. It's only because Burrage was decided, and if it's really a Burrage claim, that his claim is timely. So either way, he's got a procedural hurdle to getting to where we want to go. But we haven't held people to appeal on collateral attack waivers, it seems to me, in all the Johnson cases that are coming along. So when the Supreme Court comes up with something like Burrage or Johnson, we've seen that as overcoming the waivers. If it's an effective assistance of counsel, it would overcome the waivers. No, no, even if it's just a straight Burrage claim. I mean, I'm thinking of these mountains of Johnson claims that we're looking at right now since we're coming up to the one-year mark there. And I don't believe we've said to the government, you need to worry about that later on in the district court. And I think the difference goes back to, again, is Hatfield and Burrage. Hatfield said the minimum for this results from is a but-for causality. It's cited with approval, as the defendant notes in his brief, by the Burrage decision. Burrage no doubt contracted who is liable for results from in the Eighth Circuit, where they had this instruction that was taken to task in Hatfield. We don't think it contracted in the Seventh Circuit, who was responsible after Hatfield, because the government would have to prove but-for causality under the results from after Hatfield, which was decided prior to the lethal distribution of oxycodone in this case. We do think that the oxycodone, the PSR said in paragraph 17, which was unobjected to, so it's a fact that's not in dispute, that there was a lethal amount of oxycodone in his system and a large amount of cocaine. If this was reversed, where Mr. Gaylord was the distributor of the cocaine, then we would have a different question. But it is independently sufficient oxycodone. But the toxicology report, as you cite in your brief, is more nuanced. And actually opioids, of which oxycodone is one, are the type of substance to which people build resistance. I mean, we know this from, like, the endless number of heroin cases that we see. So it could be that 0.64 micrograms per milliliter would kill some people all by itself, but if you're a habitual user of oxycodone, maybe you need, you know, 0.84 micrograms per milliliter. We don't have the evidence. If we got that far, and obviously I understand your position that we have procedural hurdles to get through, but if we got that far, I would think that you would need expert testimony to nail down whether this amount for this man, given his history, you'd put evidence in the record about him, could have independently killed him. I think that would have been true had it gone to trial, but when he pled guilty and admitted under oath, the oxycodone I distributed caused the death of Mr. Evans. But he didn't know about all of this. I'm not sure that was a knowing statement. I think, I mean, the autopsy was known at that point. They could have looked at this, and the record doesn't say whether they even got their own expert to opine. And just really, did he know whether he was talking about but-for cause or proximate cause or some other kind of cause? I mean, simultaneous cause? I'm not sure that I would go that far on that point if we were to get to this issue. I understand your point, and I think that goes to the remedy a little bit, and I think it's important. The remedy in this case, let's suppose that we are wrong and Mr. Gaylord is entitled to relief. Then this would go back to be proven to a jury whether or not it resulted from the but-for causation after Burrage, and if a jury found it. Well, I think there would be an intermediate step where we'd have to look into, where the district court would have to look into whether there was ineffectiveness of counsel because the district court didn't think he could look at anything. So he just says, I'm done, you know, stone versus powder. I agree with you. I meant if he's completely successful in the 2255 and it goes back. Then it would go to a jury, and we do believe it would be proven beyond a reasonable doubt that it was a but-for causation. That would subject him to the 240-month sentence. He's currently serving a 157-month sentence because of some reductions, which wouldn't apply if it went back. So I do think there's a practical aspect of maybe being careful what he wishes for, and that's his right if he wants to do that, but I just think it's appropriate to raise that to say this is a potential outcome in this case. But we do think that it was procedurally barred because he waived this claim, and we would ask that the judgment would be affirmed. All right. Thank you. Anything further, Mr. Friedman? Just briefly. Wait a second. Wait until you're up. Sorry for walking and talking. Just briefly, what puzzles me, the argument that ineffectiveness wasn't raised. For a pro se petition, he couldn't raise it anymore. What about the timeliness point, though? Well, one, the government waived timeliness. I don't know whether you can unwaive it, but putting that aside. I mean, the lawyer had some maybe should, a savvy lawyer may have understood that the jury instruction case in Hatfield, as you called it, would have put him on notice to try to preserve this issue in the first place. But it was a Seventh Circuit decision. There were other decisions, and the Burrage case did give notice to the client. That's the type of thing that a pro se litigant, obviously when they filed this stuff, pro se would pick up. He would never have picked up the Hatfield. And in the record, what the petitioner has alleged is that he actually asked him what the standard was, and he said, the lawyer said, I don't know. And I think all the pre-Burrage cases are all muddied. Mr. Friedman, if we were to follow the suggested route that you would have us, in these mixed cases, would a defense counsel have to, in every case, make an independent examination or demand that the government produce an expert to establish the button code? I'm just trying to think. And I think, yes, you're asking about a policy consideration. There's these large 20-year sentences where somebody gets 20 years because he sold some drug to somebody, and then that person sold another drug, and then that person also took a bunch of other bad stuff in his system. I think that should be looked at very closely. Yeah, well, I appreciate the argument on the length of drug sentences. That argument can be made in a whole host of other areas in dealing with drugs. I'm just trying to see how this plays out on the responsibility of counsel, and I think speaking to what Chief Judge Wood said about who's going to be the burden here in these mixed cases. Well, you get a report, PSR defense lawyer has done his best. You would say in this case not because he didn't explain the possibility of government unable to carry the day. So are these cases all going to have to have, in a plea setting, a built-in expert back? I think so. I think the defense should get the expert. The expert could say, you know what, the drugs that he had in the system that he took, I can't help you. Or it could be a close case. And I think, I mean, I don't want to always encourage the court this is going to lead to massive hearings, but I don't think it's all that complicated. Well, you know, you've got a mixed case, and I'm just trying to think this through, and you've been offered a pretty good plea deal, let's say. Yeah. And so the defense counsel says, you know, if we battle this mixed use case or mixed suggestion case, and we go to trial. I'm trying to think what defense counsel is going to, what his or her responsibility is going to be explaining, you know, and if we lose that battle and we lose this plea deal of 10 years, it could be 20. You know, there's ramifications, and that's why I'm trying to play out the procedure here. And I actually agree with you, but knowledge is power. If the defense counsel hires the expert and can put doubt as to that, that may lead to a better plea deal. And so what you have here is that he comes in there with no ammunition. He comes in with a gun with no bullets. And I think that, like most cases, they're plead out. The pleas may be different, you know, and of course there's always a risk. But right now, from what I've seen in this cold record, trial counsel didn't get an expert, didn't investigate this report, and it needs to be sorted out in a hearing. If there's anything else. No. Well, thank you very much. We appreciate, in addition, your taking the appointment for your client.